## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) CHRISTOPHER WILLCUTT and<br>2) TRACIE WILLCUTT, husband and wife,<br><br>   Plaintiffs,<br><br>v.<br><br>1) An insurance company d/b/a "GEICO" with an actual legal entity name as either GEICO GENERAL INSURANCE COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, or GEICO CASUALTY COMPANY, a corporation,<br><br>   Defendant. | Case No.: _____<br>**JURY TRIAL DEMANDED**<br>**ATTORNEYS' LIEN CLAIMED** |

### C O M P L A I N T

### I. PRELIMINARY STATEMENT

1. This lawsuit is to punish and deter the Defendant insurance company for breaching its duty of good faith and fair dealing to Plaintiffs, Christopher Willcutt and Tracie Willcutt, and for committing fraud upon the Plaintiffs as described herein.

### II. PARTIES

2. Plaintiffs are individual citizens and residents of Logan County, State of Oklahoma.

3. At all times material to this case, the Plaintiffs were insured with a policy of insurance with the Defendant which provided collision coverage.

4.      Defendant is an insurance company that is doing business generally as GEICO and represented itself as "GEICO" to the Plaintiffs at the time that Plaintiffs were conducting business with it.

5.      According to GEICO's websites[1], the insurance company operates under different entities including the following: Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company.

6.      The Plaintiffs are suing whatever entity is the entity that Plaintiffs were contracted with; generally known to Plaintiffs as "GEICO."  However, because Plaintiffs are not sure as to which of the legal entities GEICO will assert wrote the particular policy of insurance, Plaintiffs have styled the case to place the appropriate entity on notice of this lawsuit.

7.      According to GEICO's website, the corporate headquarters for GEICO is located at 5260 Western Avenue, Chevy Chase, Maryland, 20815.  This is confirmed by reviewing Google Maps of the area.[2]

8.      Upon information and belief of Plaintiffs' counsel, regardless of which precise legal entity is the correctly named Defendant, the entity will be an out of state entity such to create complete diversity of citizenship.

---

[1] http://www.geico.com/about/corporate/at-a-glance/ and
http://www.geico.com/about/corporate/corporate-ownership/

[2] See street view of
http://maps.google.com/maps?hl=en&rlz=1W1GGLL_enUS339&q=5260+western+ave+chevy+chase+md+20815&gs_upl=2102l5975l0l8594l6l4l1l0l0l0l188l549l1.3l5l0&bav=on.2,or.r_gc.r_pw.,cf.osb&biw=1600&bih=949&wrapid=tljp1327273497396010&um=1&ie=UTF-8&hq=&hnear=0x89b7c98fa2f41a51:0x49902329afba4f99,5260+Western+Ave,+Chevy+Chase,+MD+20815&gl=us&ei=fJUcT53uLJLg2wWq-rn9Ag&sa=X&oi=geocode_result&ct=title&resnum=1&sqi=2&ved=0CB4Q8gEwAA

9. The Defendant insurance company is transacting business in the State of Oklahoma.

10. Defendant insurance company is in the business of selling insurance, including automobile insurance to the general public.

### III. JURISDICTION AND VENUE

11. Upon information and belief of counsel for Plaintiffs, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiffs and Defendant are citizens of different states, Plaintiffs are citizens of the State of Oklahoma and the Defendant is a citizen of Maryland or another state that is not Oklahoma, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

12. Venue is proper under 28 U.S.C. § 1391(a) and (c).

### IV. FACTUAL ALLEGATIONS

13. The contract of insurance that is at issue in this case insured Plaintiffs residing in Logan County, State of Oklahoma.

14. The parties to the contract were the Plaintiffs and the Defendant.

15. The contract at issue was a policy of insurance which included collision coverage.

16. At all times material to this case, Plaintiffs had in full force and effect, an insurance policy with the Defendant whereby Defendant provided collision coverage.

17. Plaintiffs were and are the Defendant's insureds for purposes of the matters set forth herein.

18. For purposes of the matters set forth herein, all premiums due and owing on the involved insurance contract were paid.

19. Defendant accepted and retained all premiums thereon, and all applicable contracts were in full force and effect on the date that Plaintiffs filed a claim for collision coverage payments.

20. Once Plaintiffs requested benefits on the applicable policy, the Plaintiffs met all conditions precedent for claim payment and collection of benefits on the policy of insurance.

21. On or about August 31, 2003, Plaintiffs' vehicle was involved in a collision that rendered Plaintiffs' vehicle a total loss.

22. At the time, Plaintiffs had what Plaintiffs understood to be, "full coverage" insurance with GEICO.

23. As a result, Plaintiffs filed a collision claim with GEICO.

24. Upon information and belief of Plaintiffs, GEICO assigned a claim number to the claim and it may have been 0156964900101030.

25. As a result of Plaintiffs' claim, GEICO evaluated the amount of the total loss settlement, sent a subrogation demand to another insurance company, generally known as Farmers Insurance Company (hereafter referred to as Farmers), for the full amount of money that GEICO believed the total loss settlement to be, including Plaintiffs' deductible.

26. Upon information and belief of the undersigned counsel, Farmers paid GEICO roughly the entire amount of GEICO's subrogation amount.

27. After GEICO's subrogation demand to Farmers was sent and after Farmers paid to GEICO roughly the amount of GEICO's subrogation demand, GEICO then communicated with its own insured.

28. GEICO did not tell its own insured that a subrogation demand had already been made on Farmers.

29. GEICO did not tell its own insured that Farmers had already paid roughly the entire amount of the subrogation demand.

30. GEICO did not tell its own insured that it had already recovered the full extent of any deductible from Farmers.

31. GEICO told a figure to its own insured that was less than the figure it told to Farmers. In other words, GEICO told Farmers one figure and its own insured a different lower figure; and profited the difference.

32. GEICO also told its own insured that GEICO would be required to subtract the deductible from the figure told to the insured because GEICO had not yet been able to recover the deductible from the adverse insurance company. However, GEICO promised it would pay back the insureds the amount of the deductible, if it were ever recovered from the adverse carrier.

33. However, the truth was, that at the time GEICO told its own insureds that it would reimburse the insureds for their deductible if it were recovered from

the adverse carrier, GEICO had already recovered the money from Farmers. GEICO just never bothered to disclose that key fact to their own insureds.

34. The actions described above constitute fraud on behalf of GEICO on its own insureds.

35. The insureds did not know until 2011 that GEICO had defrauded them.

36. From 2003 until 2011, the insureds were still trusting GEICO to eventually send them the reimbursed deductible.

36. Then, in 2011, the insureds contacted the insurance companies, inquired into the claims, and figured out what had occurred about nine years ago. Until 2011, the Plaintiffs were not on notice of the fraud and it is not reasonable for the Plaintiffs to have expected the fraud. The Plaintiffs simply trusted their own insurance company to eventually refund the deductible amount.

37. Incredibly, GEICO actually turned a profit from their own insureds claim, by collecting more money from Farmers on a subrogation claim than it paid out to its own insured.

38. GEICO engaged in fraud to save or make itself money at the expense of its own insureds.

39. GEICO breached its duty of good faith and fair dealing to Plaintiffs.

40. Defendant has failed to pay the full policy benefits on the involved policy of insurance.

41.     The violations of the duty of good faith and fair dealing and the fraud resulted in a financial benefit to the Defendant.

## V. DAMAGES

42.     As a result of the Defendant's breach of the covenant of good faith and fair dealing, and fraud, Plaintiffs suffered the loss of a portion of the policy coverage, anxiety, frustration, mental and emotional distress, some additional financial hardship, and attorneys' expenses associated with prosecuting this lawsuit.

43.     Defendant has acted intentionally and with malice or has been guilty of reckless disregard for the rights of people, entitling Plaintiffs to punitive damages.

## VI. DUTY:  INSURANCE COMPANIES MUST NEVER PUT MONEY OVER PEOPLE

44.     Defendant is an insurance company.

45.      Defendant makes revenue by collecting insurance premiums from the people of Oklahoma that it claims to insure, and when the people of Oklahoma pay Defendant more premiums, the Defendant makes more money.

46.     The claims of Oklahomans are expenses to the Defendant.

47.     The lower the expenses, the more money that the Defendant makes.

48.     The lower the claims of the people, the higher the income of the Defendant insurance company.

49.     Defendant is a "for profit" insurance company.

50. Defendant must never put its own interest in money over its duty to pay valid claims. If it does, it has violated the covenant of good faith.

## VII. DUTY: INSURANCE COMPANIES DO NOT GET TO MAKE UP THEIR OWN RULES

51. Insurance companies do not get to make up their own rules.

52. Insurance companies must never violate the laws of the state of Oklahoma.

53. Insurance companies must never violate regulations set forth by the Oklahoma Insurance Commissioner.

54. Insurance companies must never violate Oklahoma common law.

55. Insurance companies must never violate the Unfair Claims Settlement Practices Act.

56. A violation of a law or a regulation is a violation of the duty of good faith.

## VIII. THE DUTY OF GOOD FAITH EXISTS TO PREVENT HARM

57. The laws of Oklahoma and the duty of good faith exist to prevent harm to the people of the state.

58. Punitive damages are an important tool to discipline insurance companies into compliance with the duty of good faith.

59. If insurance companies are allowed to break the rules without being punished or deterred, severe harms may occur to Oklahoma families.

60. Some examples of the harms which may occur by an insurance company's violation of the covenant of good faith include loss of policy coverage, emotional distress, loss of shelter, loss of medical treatment, inability to get a car repaired, lost wages, bodily injury, loss of health, death to the insured, death to other people to whom an insured may be legally liable, unprotected legal liabilities, loss of promised financial protection, emotional harm, family stress, loss of transportation, loss of credit, and all sorts of other harms and losses resulting in society due to the ripple effects of all the above. The harms could occur to anyone who lives in Oklahoma. These potential harms go toward the important duty of the Defendant to act in good faith.

## IX. DEFENDANT'S DUTY OF GOOD FAITH

61. All of the following are part of Defendant's duty of good faith owed to all its' insureds, including Plaintiffs.

62. Defendant must always be honest.

63. Defendant must always fulfill its promises.

64. Defendant must always keep its word.

65. Defendant must fulfill its advertised guarantees.

66. Defendant must always pay promised policy benefits.

67. Defendant must always stay apprised of and comply with the laws of the state of Oklahoma.

68. Defendant must always investigate claims honestly.

69. Defendant must always investigate claims fully.

70. Defendant must hire competent claims adjusters.

71. Defendant must always have written standards, a claims procedures manual, and/or written rules -- to prevent harm.

72. Defendant must never shift the burden of claims investigation to the insured or any other third party.

73. Defendant must never refuse to honor claims due to laziness in a claims investigation.

74. Defendant must never deny or partially deny a claim based upon fraudulent paperwork or documentation that does not support the denial.

75. Defendant must never fail to produce all insurance policy information to the insured upon receipt of claim.

76. Defendant must never steal money from its own insureds.

77. Defendant must always stand ready to provide a comprehensive accounting to any insured of all insurance policies and benefits upon notification of a claim.

78. Defendant must never fail to disclose insurance policy benefits based upon a complete investigation. Defendant must never fail to fully disclose to all first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented.

79. Defendant must not refuse to honor Plaintiffs' claims by knowingly misconstruing and misapplying the law of the state of Oklahoma.

80. Defendant must always teach claims adjusters how to handle claims in a manner that claims adjusters can be proud of.

81. Once liability is reasonably established, Defendant must make prompt payment of an insured's claim.

82. Defendant must not make the claims process an adversarial process for the insured.

83. Defendant must not force an insured to file suit in order to secure benefits that Defendants know or reasonably should know are payable or should have already been paid.

84. Defendant must not fail to properly evaluate any investigation performed.

85. Defendant must help the insured through the claims process.

86. Defendant must not delay owed payment.

87. Defendant must treat the insured with equal regard to the insurance company's own interest.

88. Defendant must not put the insurance company's interest in saving money ahead of the insured's interest in being paid.

89. Defendant must work just as hard to figure out how to pay a claim as how to deny a claim.

90. Defendant may not twist the law to create unreasonable disputes in order to delay payment of an otherwise valid claim.

91. Defendant must put any claims denials or partial claims denials in writing with an explanation as to the policy provisions and facts upon which the denial is being made.

92. Defendant must always have claims files ready for examination by legal authorities and claims files must always contain all notes and work papers pertaining to the claim in such detail that all relevant events and the dates of such events can be reconstructed.

93. Defendant must tell the story of the life of the claim in the claims file.

94. Defendant must document what happened in the claim, when, and why, in the claims file.

95. Defendant must not deny or fail to pay a claim or any portion of a claim which is valid under Oklahoma law.

96. Defendant must always spell out any denials of coverage or claims, including a full explanation for the reasons for any full or partial denials.

97. Defendants must always take into account all applicable law prior to making a claims decision.

98. Defendant must never deny a claim or any part of a claim based upon insufficient information.

99. Defendant must never deny a claim or any portion of a claim based on speculation or guesswork.

100. Defendant must never deny a claim or any portion of a claim based on biased information.

101. Defendant must give the insured the benefit of the doubt.

102. Defendant is not permitted to fudge about what the policy provisions or the law is.

103. Defendant must always keep the insured fully informed on the status of the claim.

104. Defendant must never conceal or fail to disclose how the insurance company has handled similar situations in the past.

105. Defendant may not try to save money at the insured's expense.

106. Defendant must never violate the covenant of good faith after suit is filed.

107. Defendant may <u>never</u> lie to the insured.

108. Defendant must never violate the Oklahoma Unfair Claim Settlement Practices Act.

109. Defendant must never deny a claim for one reason and then, when it is clear that the first reason is not valid, change to deny the claim for some new reason when the first reason does not work out.

## X. BREACH OF DUTY OF GOOD FAITH AND FRAUD

110. Defendant lied to Plaintiffs, defrauded Plaintiffs, and breached the duty of good faith to save itself money and/or make money.

111. Defendant knew or should have known that it was defrauding the Plaintiffs.

112.     Defendant admitted every element of Plaintiffs' claim, admitted via its demand to Farmers the amount to be paid, and simply did not do so.  Instead, it lied to its insured and said it would pay the deductible back if it ever retrieved it from the adverse carrier.

113.     Defendant knows or should know that it owes Plaintiffs money.

114.     Defendant has not paid the money it knows it owes Plaintiffs.

115.     Prior to answering this lawsuit or filing a responsive pleading, Defendant has still not paid to Plaintiffs the money which is obviously owed.

116.     The duty of good faith continues after suit is filed.

117.     Plaintiffs cooperated fully with the Defendant's requests for information and documents throughout the course of the claim.

118.     There is no reasonable basis for the delay in payment of Plaintiffs' claim.  The extreme delay is equivalent to a denial and is clearly a bad faith denial of owed money.

### XI. DEFENDANT DEFRAUDS INSUREDS BY SELLING POLICIES AND THEN REFUSING TO PAY CLAIMS

119.     Defendant sold the policy to Plaintiffs.

120.     Defendant took payment from Plaintiffs on the policy.

121.     Defendant had no problem taking Plaintiffs' money but then refused to pay the full valid claim for benefits.

122.     Defendant effectively denied policy benefits to the Plaintiffs by not paying money it knows it owes.

## XII. SUMMARY

123.    Defendant makes money by selling insurance, collecting premiums from Oklahoma families, promising to take care of families should the insurable event occur, admits it sold a policy of insurance, admits that it insures against certain contingencies such as a vehicle collision, admits that a collision occurred, admits that the collision occurred while the policy was in full force and effect, admits that the reason for the policy is to provide the insured with coverage in case of a collision and damage/total loss of an insured asset, admits that a collision and loss of a vehicle can cause an insured family significant problems, admits that it knew about the subject wreck, admits that it knew that Plaintiffs' vehicle was a total loss as a result thereof, admits that it knows that the Plaintiffs were in a vulnerable time in their life due to the wreck, admits it submitted a subrogation demand to Farmers insurance, admits the amount submitted to Farmers was in excess of the amount told to the insureds, admits it came into possession of funds from Farmers before it paid the Plaintiffs' claim, and admits that the extremely long delay in reasonable payment has caused their own insureds addition harm, and admits that there is no excuse for not making payment of these funds.

124.    Further, Defendant admits that if the Plaintiffs were to have been caught stealing funds from the Defendant (as opposed to the Defendant stealing from the Plaintiff) that the Defendant would have reported the theft to the Oklahoma Insurance Commissioner and other law enforcement agencies.

125. All allegations contained herein are upon current knowledge and belief of Plaintiffs and subject to amendment and corrections as necessary.

### XIII. CONCLUSION

WHEREFORE, Plaintiffs, Christopher Willcutt and Tracie Willcutt, pray that this Court render judgment against the Defendant for an amount in excess of $75,000.00 in actual damages, and in an amount in excess of $75,000.00 for punitive damages. The amount of punitive damages should be, in part, based on the amount necessary to make sure that the Defendant and other similar insurers are punished and deterred from similar fraudulent behavior.

Plaintiffs demand a trial by jury.

Attorneys' lien claimed.

Dated this **10th** day of **February, 2012**.

*/s/ John Branum*
John L. Branum, OBA #20165
CARR & CARR
1350 S.W. 89th Street
Oklahoma City, OK 73159
405/249-4215 (Direct)
800/418-8210 (Fax)
jbranum@carrcarrokc.com

**ATTORNEYS FOR PLAINTIFFS**